A06A0536. MOSS v. THE STATE.
(628 SE2d 648)

MIKELL, Judge.

After a jury trial, Ricardo Moss was convicted of aggravated assault and possession of a firearm during the commission of a crime and sentenced to a total of fifteen years for both offenses, five of which would be served in confinement and the remainder on probation. On appeal, Moss argues that he is entitled to a new trial because the trial court improperly allowed the prosecutor to inject extrinsic and prejudicial information during his closing argument and because there was insufficient evidence of his guilt. We affirm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and an appellant no longer enjoys the presumption of innocence. This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility. Conflicts in the

evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, we must uphold the jury's verdict.[1]

So viewed, the evidence shows that the victim, Edward Bryant Gillom, testified that at approximately 8:00 p.m. on May 10, 2004, he walked from his apartment at Washington Place Apartments to the complex parking lot to repair his daughter's bike. While doing so, he heard a group of men, including defendant Moss, talking about him disrespectfully. Moss entered his car and was leaving the complex when Gillom stopped him and asked if he or any of his friends had something to say to him. Gillom testified that Moss cursed at him and simultaneously reached under his seat; that he hit Moss as Moss reached under the seat; that Moss pulled out a black handgun and shot him in the leg; and that Moss continued to shoot at him as Gillom ran away, firing the gun three or four times.

Moss maintains that he shot Gillom in self-defense. He testified that on the evening in question, he ordered a pizza from Pizza Hut, then drove to the Washington Place apartment complex, where he saw some friends, Demetrius Thomas and Daniel Baker, talking in the parking lot; that the three of them talked generally but not about Gillom; that thirty to forty minutes later, as he drove away to pick up his pizza, Gillom flagged him down; that he stopped his car and that Gillom angrily asked if Moss or his friends had anything to say about him; that he did not know what Gillom was talking about so he prepared to drive off; and that Gillom attacked him, hitting him in the side of his face and upper neck area. Moss further testified that he assumed that Gillom had a weapon though he did not see one; that he reached for his .380 caliber handgun after Gillom hit him; and that he tried to drive away but that Gillom tried to hit him again, at which point he "opened fire without hesitation" because he did not know why Gillom was attacking him. Moss recalled that after the shooting, he panicked, stopped his car, and walked in the same direction as Gillom because he did not know what to do, then drove to his sister's house and told her what happened. Finally, as he prepared to turn himself in, the police arrived at his sister's house. Moss stated that he peacefully surrendered his weapon and told the officer what happened.

Logan Marshall, Sheriff of McDuffie County, testified that he responded to a call from dispatch that there had been a shooting at the complex. When he arrived, he determined that Gillom had been

---

[1] (Footnotes omitted.) *Roberts v. State*, 242 Ga. App. 621 (530 SE2d 535) (2000).

shot then went to Moss's sister's home and arrested him without incident. Marshall further testified that Moss gave him his gun, which had a laser scope attached, and his ammunition. Steve Foster, a Georgia Bureau of Investigation crime scene specialist, testified that Marshall gave him Moss's gun and ammunition the day after the shooting and that he recovered ammunition from Moss's car; that Moss's bullets were hollow point bullets that are usually used against people; that he located a magazine in the ashtray of Moss's vehicle that contained seven or eleven bullets; and that at the scene, he located two bullet fragments in a nearby automobile, one of which he recovered, two shell casings on the pavement of the driveway, and a bullet hole in one of the apartment buildings.

The state offered the testimony of several eyewitnesses who were present when the incident occurred, all of whom testified that Gillom approached Moss's car and that Moss shot Gillom. Several witnesses testified that they did not know whether Gillom hit Moss. Other witnesses recalled that Gillom hit Moss and tried to block Moss's exit from his car before Moss shot him. No eyewitness testified that Gillom had a weapon when he approached Moss's car.

1. In his first enumerated error, Moss argues that he is entitled to a new trial because the prosecutor introduced extrinsic and prejudicial matters during his closing argument. During closing, the prosecutor talked about a recent local shooting, which he called the "T & W shooting," wherein a 14-year-old girl who was sitting in a car was killed by a stray bullet fired by a young man, who had been insulted by a group of people and retaliated by shooting at them. The prosecutor analogized that Moss had been insulted and could simply have driven away but chose to shoot Gillom instead and told the jury that it needed to send a message that this was an inappropriate way to handle such a conflict. Defense counsel objected on the grounds that the incident referenced was not relevant to the instant case, and the trial court overruled the objection, stating that the prosecutor was entitled to wide latitude in his closing argument. Moss argues that the reference to the earlier shooting was made solely to prejudice the jury.

"As a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion."[2] Georgia courts have allowed the use of well-known cases to illustrate legal principles.[3] Moreover,

---

[2] (Citation and punctuation omitted.) *Cole v. State*, 261 Ga. App. 809, 810 (2) (584 SE2d 37) (2003).

[3] *Hudson v. State*, 273 Ga. 124, 127 (5) (538 SE2d 751) (2000).

> Counsel's illustrations may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination. Counsel may bring to his use in the discussion of the case well-established historical facts and may allude to such principles of divine law relating to transactions of men as may be appropriate to the case. Counsel for the state may forcibly or even extravagantly attempt to impress upon the jury the enormity of the offense and the solemnity of their duty in relation thereto.[4]

In the case sub judice, counsel argued that the cases were analogous because both incidents began with one person insulting the other and ended with the use of a gun. We find no error in the trial court's decision to overrule the defense's objection as counsel's statement was within the parameters of appropriate closing argument.

2. Moss contends that his convictions must be reversed for insufficiency of the evidence. We disagree.

A person commits the offense of aggravated assault when he assaults with a deadly weapon, which when used offensively against a person, is likely to or actually does result in serious bodily injury.[5] The evidence is undisputed that Gillom did not have a weapon and that Moss shot him during an argument. Though Moss argues that his actions were justified because he was defending himself from Gillom's attack, this testimony does not render the evidence against Moss insufficient. "A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses and it serves as the arbiter of conflicts in the evidence before it."[6] The fact that Moss and Gillom offered opposite accounts as to the reason Moss reached for the gun is of no consequence on appeal because we do not speculate as to which evidence the jury chose to believe,[7] and it obviously chose to believe Gillom's account. The evidence was sufficient to authorize a rational trier of fact to find Moss guilty beyond a reasonable doubt of aggravated assault and possession of a firearm during the commission of that crime.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

---

[4] (Citations, punctuation and footnote omitted.) *Cooper v. State*, 260 Ga. 549, 550 (3) (b) (397 SE2d 705) (1990), citing *Conner v. State*, 251 Ga. 113, 122 (6) (303 SE2d 266) (1983).

[5] See OCGA § 16-5-21 (a) (2).

[6] (Citation and punctuation omitted.) *Campbell v. State*, 258 Ga. App. 863, 866 (575 SE2d 748) (2002). See also *Roberts*, supra; *McLeod v. State*, 245 Ga. App. 668, 668-669 (1) (538 SE2d 759) (2000).

[7] *Chalvatzis v. State*, 265 Ga. App. 699, 701 (1) (595 SE2d 558) (2004).

DECIDED MARCH 14, 2006.

*Harold W. Wallace III, Sara E. Meyers*, for appellant.
*Dennis C. Sanders, District Attorney, Durwood R. Davis, Assistant District Attorney*, for appellee.